Date signed June 11, 2010



_____
DUNCAN W. KEIR
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Baltimore

| | | | |
|---|---|---|---|
| In Re: | * | | |
| JANET ANN SYDNOR | * | Case No. | 08-14229DK |
| | * | Chapter | 11 |
| | * | | |
| | * | | |
| Debtor | * | | |

| | | | |
|---|---|---|---|
| In Re: | * | | |
| CHARLES VERNON CLARKSON | * | Case No. | 09-22084DK |
| | * | Chapter | 11 |
| | * | | |
| | * | | |
| Debtor | * | | |

### MEMORANDUM OF DECISION

Before the court is a Motion filed by Lakefront Investors LLC ("Lakefront"), TrustCapital Investments, LLC ("TrustCapital"), Equity Trust Company Custodian FBO Nicholas John Lazarchick IRA and Nicholas John Lazarchick (TTEE) (collectively referred to as the "Lenders"), in each of the above-captioned Chapter 11 cases, seeking the appointment of a Chapter 11 Trustee or in the alternative, the conversion of the case to Chapter 7. The two motions were the subject of a combined hearing and the court's findings set forth in this Memorandum of Decision are entered as to both cases.

The present bankruptcy case of debtor Janet Sydnor ("Sydnor") was commenced as a voluntary case under Chapter 12 filed by Sydnor in proper person on March 27, 2008.  Sydnor is an individual and asserted in the petition that she was a family farmer conducting agricultural/commercial fishing.  The petition states her residence to be 3946 Robinson Neck Road, Taylor's Island, Dorchester County, Maryland (hereinafter the "Taylor's Island Property").  This is the fifth bankruptcy case filed by Sydnor in this district, the most recent past case being Case no. 03-57330 filed under Chapter 13 on April 30, 2003.  That case was dismissed on November 14, 2003 for material default in payments under a pending Chapter 13 plan.  The court's record reflects that Sydnor had made no payments on such plan in the six months the case was pending.

At the time of the dismissal of the previous case, a lender, Chase Manhattan Mortgage Corporation ("Chase"), had filed a motion for relief from stay as to the property known as 23349 Cove Road, Chance, Somerset County, Maryland (hereinafter "23349 Cove Road").  In that motion Chase asserted that the property was co-owned by Sydnor and Charles Clarkson ("Clarkson") and was in significant payment default.  Clarkson was joined as a respondent in that motion as a co-debtor pursuant to 11 U.S.C. 1301.[1]  Because the dismissal terminated the automatic stay before the motion was resolved, the motion was mooted.  Schedule A filed in the immediate previous case testified that Sydnor jointly owned 23349 Cove Road and that the property had a value of $105,000.00 and was subject to a mortgage in the amount of $180,000.00 held by Chase.  No other secured debt was scheduled in that case.

_____

[1] Hereafter, all code sections refer to the United States Bankruptcy Code found at Title 11 of the United States Code unless otherwise noted.

Turning to the present case, on March 27, 2008, the same date the instant case was filed, Sydnor filed a complaint in this court instituting an adversary proceeding against Lenders. The complaint as amended asserted that TrustCapital held mortgages on properties in Dorchester and Somerset County and that "many laws of the State of Maryland lending laws and others were violated . . ." On April 23, 2008, Sydnor filed an objection to the allowance of claims of TrustCapital that alleged it held mortgages on 23349 Cove Road, 23341 Cove Road and upon the Taylor's Island Property and had instituted foreclosure. On the same date, Sydnor filed a second adversary proceeding seeking to avoid the liens of the Lenders under the mortgages, asserting that such liens were violative of mortgage lending laws. The second adversary proceeding was subsequently consolidated into the first adversary proceeding upon Sydnor's request. On December 18, 2008, a second amended complaint was filed in the adversary proceeding by counsel for the debtor in that proceeding, Jan Berlage, Esquire. Previous thereto the court had determined that the objection to claim and the consolidated adversary proceeding should be heard together, it appearing that there were common factual issues.

The schedules filed in Sydnor's present case testify that she owns a joint interest in 23349 Cove Road, as well as 23341 Cove Road and the Taylor's Island Property. The schedules assert that the market values for the Cove Road Properties are $1,300,000.00 and the Taylor's Island Property $2,475,000.00. Schedule D testifies that TrustCapital holds secured loans secured by the Cove Road Properties and the Taylor Island Properties which indebtednesses are disputed and total in amount $2,350,000.00. The other creditors scheduled in Sydnor's case are five unsecured creditors holding debts totaling $45,000.00 most of which being owed to an accountant. The Statement of Financial Affairs testifies that Sydnor's income in the year prior to

-3-

bankruptcy filing was $15,000.00 as a "farm (tree sale) NASNA" and also that she receives an additional $1,000.00 a month "SSDI."

In answer to Question 4 of the Statement of Financial Affairs as to pending suits or administrative proceedings to which the debtor is a party, Sydnor testified that there were "none," which appears inconsistent to the statement contained in the objection to claim asserting that the Lenders had instituted foreclosure proceedings prior to the filing of the bankruptcy petition.

The proposed plan filed by Sydnor under Chapter 12 proposed that she would make no monthly payments and that payment in full of all debts would be received from a refinance of the subject properties which the plan stated was pending. The Chapter 12 Trustee objected to confirmation and filed a motion to dismiss the case asserting that Sydnor was ineligible to be a debtor under Chapter 12 as she was not a family farmer because the preponderance of her indebtednesses did not arise from a family farming operation.[2] The court subsequently granted the motion by the Trustee but afforded Sydnor a period of time within which she could convert the case to another chapter. Sydnor subsequently did convert the case to Chapter 11.

On October 27, 2008, Lenders filed a motion for relief from stay asserting that they held a note in the original principal amount of $1,250,000.00 secured by the Taylor's Island Property, a second note in the original principal amount of $562,500.00 secured by 23349 Cove Road, as well as a third note in the original principal amount of $36,000.00 secured by 23349 Cove Road. The motion asserted, *inter alia*, that no payments had been received post petition as to the mortgage loans and that the values of the subject collateral were declining. The motion

---

[2] *See* 11 U.S.C. § 101(18).

concluded by asserting that Lenders were not adequately protected, that Sydnor had obtained no success in her proposed refinancing and that the properties were therefore not needed for an effective reorganization. Sydnor responded, alleging various misdeeds by Lenders and asserting that the properties had significantly increased in value.

A hearing was held upon the matter on November 18, 2008. At that hearing the court, (Derby, J.), denied without prejudice the motion for relief from stay as to the Taylor's Island Property, but conditioned the automatic stay as to 23349 Cove Road. The stay would continue in effect only if Sydnor produced proof of an agreement by Somerset County as to the manner of paying outstanding tax bills upon the property, or in the absence thereof, that the outstanding taxes were paid over a period of six months. Sydnor was also required to maintain insurance upon the property. The Order was entered on December 18, 2008.

On June 23, 2009, Lenders filed notice of default under that Order asserting that Sydnor was not compliant as to the payment of taxes and that Somerset County had noticed 23349 Cove Road for a tax sale. As has often been the situation in this case, Sydnor countered that the non-payment of the taxes was as a result of obstructionism by the Lenders as to a sale of trees and that she had a contract with the United States Department of Agriculture ("USDA") that would soon produce money to pay the taxes, but that the contract was delayed. Sydnor further averred that Somerset County had agreed to accept the taxes at a later date but attached no written agreement to the answer to the motion.

Meanwhile, the co-owner of the Taylor's Island Property, Clarkson, filed a voluntary Chapter 12, thus beginning a new case for Clarkson. It appears, and the court finds as a fact, that Sydnor substantially completed the forms for that filing, although they bear Clarkson's

signature.[3]  The filing by Clarkson stayed a pending foreclosure case brought by the Lenders in the Circuit Court for Dorchester County as to Clarkson's interest in the Taylor's Island Property[4] and to the Cove Road properties in the Circuit Court for Somerset County.  Prior to the filing of this bankruptcy case, the record demonstrates that Clarkson had filed an action against Lenders in the Somerset County Circuit Court, which in addition to causes of action similar to those in Sydnor's adversary proceeding, included a motion for temporary restraining order seeking to stop the pending foreclosure.  The state court entered an Order providing for such a stay but conditioned upon the filing of a bond.  Clarkson did not post the bond in state court but instead filed a bankruptcy case in effect using the automatic stay under Section 362(a) as a substitute for the stay ordered by the state court and without the condition of a bond.  That case has been removed by Lenders to this court and is now another adversary proceeding.[5]

On September 11, 2009, Lenders filed a renewed motion for relief from stay in Sydnor's case as to the Taylor's Island Property.  Lenders also brought a similar motion in Clarkson's case, that requested relief as to the Taylor's Island Property, and as to 23341 Cove Road, plus an adjacent parcel known as parcel 148, which is apparently owned by Clarkson.[6]

The court held a hearing on October 8, 2009 on the motions for relief from stay brought

---

[3]  In fact, Clarkson testified at the hearing upon the Motions that he does not have a bank account and that Sydnor (her estate, as that would be) paid the filing fee.

[4]  This case is Clarkson's fourth bankruptcy case.  The last prior case was filed by Clarkson on April 12, 2005, and dismissed on November 18, 2005, after the Trustee objected to confirmation of the proposed Chapter 13 plan.

[5]  *See* Adversary Proceeding No. 09-00467DK.

[6]  Clarkson's Schedule A testifies that he is the sole owner of 23341 Cove Road and an unimproved parcel, and that he is also joint owner of the Taylor's Island Property.

by the Lenders and the disputed Notice of Default. At that hearing, the court was informed that Sydnor had not paid the taxes on 23349 Cove Road as required by the Order entered December 18, 2008. The court, (Keir, J.), modified the adequate protection previously required in Sydnor's case and granted in part the motions for relief from stay as to the Taylor's Island Property and as to 23341 Cove Road (also referred to as parcels 148 and 149). The court required tax payments for the Taylor's Island Property for tax year 2009-2010 and thereafter to be escrowed and that proof of insurance be provided as to the improvements upon the property. In addition, the court required that Sydnor produce an unconditional written statement from Somerset County that prior taxes on 23349 Cove Road had been paid. On November 20, 2009 Clarkson's case was converted to Chapter 11 upon his request.

It appears from the averments set forth in the adversary proceedings by the Debtors that the disputed loans by and between the Debtors and Lenders arose from the following events. In 1994, Sydnor purchased two lots known as 23349 Cove Road. In 2001, Clarkson purchased a third lot known as 23341 Cove Road. Their prior bankruptcy cases demonstrate that as to each of these parcels of land they were encumbered by mortgage liens. Subsequently, the Debtors signed a note to Lenders in the amount of $562,000.00 which appears to have been used at least in part to satisfy the pre-existing mortgages upon the Cove Road Properties. It also appears Debtors received some funds in excess of the amounts used to retire the prior mortgages. In February of 2006, Debtors signed another note to Lenders in the amount of $1,250,000.00 used to purchase the property on Taylor's Island. Debtors signed a third note in the amount of $36,000.00 to fund the expenses for an auction they intended to hold as to the Cove Road properties.

-7-

In Clarkson's case, the Schedules only list the disputed debt of the Lenders, plus an outstanding real estate tax (with no identification of the tax creditor) as outstanding indebtednesses.  It would appear the real estate taxes are a secured claim because Maryland's real estate tax statute creates a priming lien upon the subject property.[7]  No general unsecured creditors are scheduled.  One proof of claim has been filed by a creditor that was not scheduled, in the amount of $2,828.81 asserting a judgment debt.  Schedule I reflects income of zero for Clarkson.

In Sydnor's case, proofs of claim have been filed by unscheduled creditor Portfolio Acquisitions LLC as assignee of IDT Telecom in the amount of $221.65 and creditor Pro Fence in the amount of $23,231.22.  As to scheduled creditors, proofs of claim have been filed by Brian Bishop, former attorney to the debtor in the amount of $12,055.00 and Robins Adams Company CPA for $30,000.00, plus LVNV Funding as assignee to OSI/Sprint for $377.95.  The Lenders have also filed a claim which is the matter in dispute under the objection to claim referred to previously in these findings.  As to these filed proofs of claim the court observes that only the Lenders' claims as well as the claims of former counsel, accountant, and ProFence appear to be within the applicable statute of limitations, although no objection to the allowance of any unsecured claims has been filed by Sydnor, the debtor-in-possession.[8]

In these two Chapter 11 cases now before the court are motions by the Lenders asserting cause under Section 1104 for appointment of a trustee or in the alternative cause under Section

---

[7]  MD. CODE ANN. TAX- PROP.§§ 14-805, 14-806.  *See also In re Sylvia Dev. Corp.*, 178 B.R. 96, 97 (Bankr. D.Md. 1995).

[8]  In each case the debtor is a debtor-in-possession.

1112 for conversion of the case to Chapter 7.

Section 1104(a)(1) and (2) provide that the court shall order the appointment of a Chapter 11 Trustee if cause is found, including, *inter alia*, dishonesty, gross mismanagement, or if the appointment is in the best interests of creditors, any equity security holders and the estate. Section 1104(a)(3) adds that the court shall order appointment of a trustee "if grounds exists to dismiss or convert the case under Section 1112, but the court determines that an appointment of a trustee . . . is [instead] in the best interests of creditors and the estate." 11 U.S.C. § 1104(a)(3).

Section 1112 requires the court to apply a burden shifting analysis in its determination. The statutory construction is somewhat difficult. As discussed in Chapter 1112 of Collier's on Bankruptcy [16th edition], movant bears the initial burden to establish cause for dismissal or conversion. If cause is established, the court must dismiss the case or convert the case to a Chapter 7, whichever is in the best interest of the estate and creditors, or appoint a Chapter 11 Trustee if such appointment is instead in the best interest of creditors and the estate. Cause includes a list of enumerated factual events set forth in Section 1112(b)(4) but that list is not exclusive. Courts have determined that "bad faith" is also a basis for dismissal, conversion or appointment of a trustee. *Colliers on Bankruptcy* ¶ 1112.04[4]-[7] (Henry Somers & Alan Resnick, 16th ed. 2009).

However, even if cause is established *prima facie*, Section 1112(b) states in effect that the court shall not act if the court finds specific unusual circumstances that establish that the appointment of a trustee, dismissal or conversion would not be in the best interest of creditors and the estate. The burden is upon the respondent to prove such unusual circumstances that establish such best interest. Such unusual circumstances cannot solely be facts that are common

-9-

to Chapter 11 cases generally. *Id.* at ¶ 1112.05.

One specific circumstance that would preclude dismissal or conversion is set forth in Section 1112(b)(2). This defense requires proof that 1) there is a reasonable likelihood of a plan being confirmed within a reasonable time; 2) the cause for dismissal or conversion was an act or omission by the debtor, other than a continuing or substantial loss to the estate without reasonable likelihood of rehabilitation, and 3) for the act or omission there was a reasonable justification and which will be cured with any reasonable time.

Finally, if Section 1112(b)(2) is proven as a defense where applicable, the court will nonetheless dismiss or convert the case or appoint a Chapter 11 trustee if it is proven that such action is in the best interest of the creditors and the estate.

In addition, as stated above, the court shall appoint a Chapter 11 trustee if movant demonstrates cause pursuant to Section 1104(a), including fraud, dishonesty, incompetence or gross mismanagement or if such appointment is in the best interest of the creditors, equity security holders and the estate.

In each of these cases, Lenders assert cause alleging "numerous acts of dishonesty." The asserted numerous acts of dishonesty are set forth in the motions and additional causes were argued at the hearing after receipt of the evidence. The motions were heard at an evidentiary hearing on April 27, 2010 and then continued for final argument on May 6, 2010. The court allowed the Debtors to designate additional portions of a prior hearing transcript as an additional exhibit after conclusion of the hearing, which designation has been made.[9] The Motions were then taken under advisement.

_____

[9] *See* docket no. 171 filed in Case No. 08-14229-DK (*In re Janet Ann Sydnor*).

Before addressing these specific allegations, the court makes a finding that the controlling person behind both of these bankruptcy cases is Sydnor. It is beyond question that Sydnor substantially prepared documents in both cases and has been the architect of strategies employed in each case. At various hearings Sydnor has been the principal witness as to facts asserted on behalf of either Sydnor or Clarkson and has been the only person to present any significant argument. Although Clarkson has testified, his testimony has generally been to defer to statements made by Sydnor as to events, and he has completely deferred to Sydnor as to any argument on behalf of any request for relief or defense to any motion.

The facts in Clarkson's case include that Clarkson as debtor-in-possession has failed to file any operating reports and has failed to pay any fees due to the United States Trustee under Chapter 123, Section 1930(a)(6) of Title 28 of the United States Code. In addition, Lenders assert a failure by Clarkson to schedule real estate tax obligations that were due and owing to Dorchester County on the Taylor's Island Property which he co-owns and a failure by Clarkson to schedule real property as an asset that he either owns an interest in, or holds in trust for another which property is located in Accomack County, Virginia.

As to Sydnor, Lenders assert that pleadings filed by her have been ghost written by an attorney and without disclosure of such fact.[10] It is further averred that "Sydnor/Clarkson" borrowed money in violation of Section 364 without any disclosure or approval by the court as required. Lenders further contend that Sydnor misrepresented the status of alleged expected payments from the USDA contracts at the hearing on October 8, 2009, upon the motions for

---

[10] A similar ghost writing allegation is contained in the Motion as pertaining to the Clarkson case, although without specific reference to counsel as the ghost writer.

relief from stay.  It is asserted that Sydnor in making statements as to the USDA contract failed

to disclose information in her possession that was contrary to her testimony.  Lenders also claim

that Sydnor misrepresented information concerning the USDA contract situation in the

Disclosure Statement she filed in her case on December 15, 2009, which Disclosure Statement

was later disapproved as insufficient.  The motion also states that Sydnor made another

misrepresentation in the Disclosure Statement as to rent to be expected as income and that the

disclosure failed to indicate that the tenants had in fact vacated the premises.  Finally, Lenders

assert that Sydnor misrepresented in her Disclosure Statement the income levels to be expected

and received from contracts with BAE by a factor of three.

It is clear that the Lenders have proven a *prima facie* case of cause to dismiss or convert

both cases pursuant to Section 1112 and/or to appoint a Chapter 11 Trustee pursuant to Section

1104.  For the reasons hereinafter stated, the court concludes that the best interests of creditors

and the estate are served by the appointment of a Chapter 11 Trustee.  In Section 1112(b)(4), the

enumerated non-exclusive list of causes for dismissal or conversion includes failure to provide

information reasonably requested by the United States Trustee, 11 U.S.C. § 1112(b)(4)(H), and

failure to pay required fees, 11 U.S.C. § 1112(b)(4)(K).  There is no factual dispute that Clarkson

utterly has failed to file any operating reports in his Chapter 11 bankruptcy case.  Sydnor caught

up the filing of reports in her case by filing five monthly reports on April 20, 2010.[11]

---

[11] Monthly operating reports are required by Sections 1107(a), 1106(a)(1), and 704(a)(8).
Section 1107(a) provides that a debtor in possession shall perform all the functions of a trustee
under chapter 11.  Section 1106(a)(1) states that a trustee in chapter 11 is required to perform the
duties of a trustee under certain subsections of Section 704, including (8).  Section 704(a)(8)
provides:
> The trustee shall– if the business of the debtor is authorized to be operated, filed
> with the court, with the United States trustee, and with any governmental unit

-12-

Both Debtors are significantly delinquent in payment of fees required under Chapter 123 of Title 28 of the United States Code.  In addition, Clarkson's case is essentially a two-party dispute.  There are virtually no other significant creditors other than the Lenders.  Clarkson at the time of filing had zero income and continues to have no income and no material property other than the interests in real estate set forth above.  At the hearing upon the Motions, Clarkson testified that he did not have a bank account because it took a minimum of $25.00 to open such an account, implying that he did not have those funds.  From the totality of facts and circumstances demonstrated by the evidence and the demeanor of the witnesses, it is clear and the court finds that the Clarkson case was filed by  Clarkson, likely upon the urging and design of Sydnor, to substitute the automatic stay under Section 362(a) for the conditioned stay of foreclosure ordered by the Circuit Court for Somerset County.

As to Clarkson's case, in addition to cause under Section 1112(b)(4)(H) and (K), the court finds that Clarkson's case is subject to dismissal under Section 1112 for lack of good faith in its purpose and prosecution.

In the seminal case of *Carolin Corporation v. Miller*, 886 F.2d. 693 (4th Cir. 1989), at least where a motion to dismiss a voluntary Chapter 11 bankruptcy petition is filed at the very outset of the case on the grounds that the case was not commenced in good faith, the United States Court of Appeals for the Fourth Circuit holds that the movant must demonstrate both an objective futility to the asserted attempt to reorganize and a subjective showing of bad faith as to

---

charged with responsibility for collection or determination of any tax arising out of such operation, periodic reports and summaries of the operation of such business, including a statement of receipts and disbursements, and such other information as the United States trustee or the court requires.

11 U.S.C. § 704(a)(8).

-13-

the intent of the debtor in order to obtain dismissal on the basis of lack of good faith.  *Id.* at 700.

Whether such a stringent standard applies to a motion to convert the case to Chapter 7 or appoint

a trustee determined by the court over ten months after the date of the petition filing, is perhaps

uncertain.  As discussed in *Colliers*,

> The requirement of objectivity [sic] futility as a prerequisite to dismissal for
> subjective bad faith may be criticized as imposing a too stringent ground for
> relief.  Absence of a reasonable likelihood of rehabilitation and substantial or
> continuing losses, as well as failure to confirm a plan within a time fixed by
> statute or order, and material default or failure to substantially consummate a
> confirmed plan are enumerated causes for dismissal or conversion to chapter 7
> without the necessity of proving subjective bad faith.  The effect of adding to the
> good faith doctrine the element of objective futility that is already covered by
> section 1112(b) may effectively negate bad faith filing as a basis for dismissal or
> conversion of the case.  However, even if objective futility is required by the
> Fourth Circuit for dismissal of a case at the threshold of its filing, the presence of
> bad faith conduct may add substantial weight to the movant's motion for
> dismissal for other cause.  Without requiring proof of objectivity [sic] futility, bad
> faith is a basis to appoint a trustee and divest the debtor that is misusing the
> system from control of the estate.

*Colliers on Bankruptcy* ¶ 1112.07[6][a] (Henry Somers & Alan Resnick, 16th ed. 2009).

However, in Clarkson's case, the evidence amply demonstrates both findings set forth under the

*Carolin Corp.* standard.

As to objective futility, it is apparent from the facts that there is simply no effective

reorganization either in progress or in prospect.  In *Carolin Corp.*, the Court stated the analysis

should concentrate on determining whether, "'there is no going concern to preserve . . . and . . .

no hope of rehabilitation, except according to the debtors' terminal euphoria.'" *Id.* at 701-02

(quoting *In re Little Creek Development Co.*, 779 F.2d. 1068, 1073 (5th Cir. 1986).  The

uncontradicted facts include that at the date of filing Clarkson reported in Schedule I that he had

zero income.  Clarkson's testimony at the hearing upon the Motions included that he had no

-14-

bank account and that the reason he had not opened any such account was he did not have the $25.00 minimum balance to deposit. Clarkson has filed no operating reports in his case reporting any income or expenditures or other commercial activity that would constitute any effort or demonstrate any prospect of reorganization. No proposed Chapter 11 plan, or disclosure statement has been filed in the ten months of this case and there appears no evidence that a successful plan can be formulated at any foreseeable time in the future.

Clarkson is the co-owner and co-obligor on the large alleged secured claim of the Lenders. He has filed a voluntary bankruptcy case, initially under Chapter 12 and then converted to Chapter 11, to obtain an automatic stay preventing foreclosure as against his interests in the collateral real estate but without any present economic activity other than that which the principal actor, Sydnor, presents to the court in her case.[12] As to that presentation the court will examine the facts hereinafter.

_____

[12] At the second day of the hearing upon the Motions, Sydnor announced that she and Clarkson were recently married. In explaining the decision, she stated:

> To consolidate things, and really nothing to do with these hearings, but because it's the right thing to do, Charles and I, in March, got a marriage certificate, got a license and we recently have been married. That's nothing to do with what happens in these cases except that I understand it will probably consolidate things more and attorneys won't have to work so hard doing it separately. But we did that mostly because it's the right thing to do. Our children, our lives, our entanglements with real estate, it was suggested that we do that and we complied with that. But happily, actually.

Hearing held, May 6, 2010. Sydnor had previously informed the court at an earlier hearing that:

> [Clarkson] has just signed on with Mr. Peter Angelos this morning actually. His physical did not go at all well. So there will be funding for his plans forthwith in that vein. Also, they may give us an actual attorney because they said they take care of their asbestos guys."

Hearing held, February 26, 2010. The court must infer that the counsel referred to as advising marriage is the counsel asserting representation of Clarkson as to any right to damages for the asbestosis. No Application to employ such counsel has been filed in either bankruptcy case.

-15-

As to subjective lack of good faith, the "inquiry is designed to ensure that the petitioner actually intends 'to use the provisions of Chapter 11 . . . to reorganize or rehabilitate an existing enterprise, or to preserve going concern values of a viable or existing business'" *Carolin Corp.*, 886 F.2d at 702 (quoting *In re Victory Construction Company*, 9 B.R. 549, 564 (Bankr. C.D. Cal. 1981)). The aim of the inquiry includes the determination as to whether or not the petitioner's real motivation is just for the purpose of invoking the automatic stay without an intent or ability to reorganize financial activities. *Id.* The examination of this question requires the court to consider the totality of circumstances and any conceivable list of factors is not exhaustive nor does one factor create a *per se* test. *Id.* at 701. "The overall aim of the twin-pronged inquiry must of course to determine whether the purposes of the Code would be furthered by permitting the Chapter 11 petitioner to proceed past filing."[13] *Id.* In the recent decision in the case of *General Growth Properties, Inc.,* 409 B.R. .43 (Bankr. S.D.N.Y. 2009), the United States Bankruptcy Court of the Southern District of New York addressing a lender's motion to dismiss the Chapter 11 case on the basis of bad faith, applied the same two-prong test mandated by *Carolin Corp.* While not attempting to enumerate all factors to be considered, the Court observed that evidence of bad faith could include:

> (1) the debtor has only one asset; (2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors; (3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt; (4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action; (5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights; (6) the debtor has little or no cash flow; (7) the debtor can't meet current expenses including the payment of personal property and real

---

[13] In this case the petitioner has proceeded a significant length of time past filing.

estate taxes; and (8) the debtor has no employees.

*Id.*. at 56 (quoting *C-TC 9th Ave. P'ship. v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304, 1311 (2d Cir. 1997).

Applying the facts of Clarkson's case to those factors, it is without question that virtually each and every one of the factors exist to the extent applicable. Clarkson has only his interest and co-interest in the real estate located in Somerset and Dorchester County as assets. There are virtually no other creditors in the case other than Lenders. The real estate interests in Dorchester County were the subject of a looming foreclosure as a result of a default on the debt. Clarkson's financial condition is indeed a true two-party dispute between the debtor and Lenders which could have been and was the subject of actions in the state courts. In Somerset County, Clarkson had succeeded in obtaining the stay order preventing the foreclosure but subject to the posting of a bond. He is also a plaintiff in an action against Lenders seeking various remedies including damages allegedly arising from violations of state statutes.[14] The timing of Clarkson's filing evidences a clear intent to substitute the automatic stay for the stay granted by the Circuit Court for Somerset County. As remarked upon above, Clarkson has no cash flow and has not been able to meet tax expenses upon the real estate. There is no enterprise and no employees.

As to the tax payment issue, by Order entered October 13, 2009, the court conditioned the continued existence of the automatic stay as to attempts to foreclose on the Cove Road properties and the Taylor's Island Property upon the payment of real estate taxes into escrow. Although Sydnor represented to the court that such payments would be made from income

---

[14] Subsequent to the filing of Clarkson's case, the Lenders as defendants in the Somerset County action filed a Notice of Removal and the action is now pending as an adversary proceeding before this court.

-17-

expected from certain contracts, when monies were not available from that source, Clarkson borrowed the funds out of the ordinary course of business with neither notice nor order authorizing such borrowing in violation of Section 364. Clarkson testified that he borrowed the funds because that was the only way he could satisfy the requirement of tax payment.

Sydnor argued that the funds were not truly "borrowed" but were "advances" from someone for whom she has been providing bookkeeping services, suggesting in effect a barter. Whether the "advance" is to be repaid in cash or by services, the advance of funds created an obligation for repayment which is an incurrence of credit regulated by Section 364. However, the court does not rely upon this apparent violation of the Bankruptcy Code as the basis for its decision. It observes that it is unlikely that Clarkson was aware of the restriction but had, in effect, handed over the reins of his financial situation and Chapter 11 case to Sydnor. As Clarkson was the actor in borrowing the funds and is the debtor-in-possession in his case, to some degree Clarkson must bear the responsibility for acts, decisions and strategies employed by Sydnor in these cases.

In addition to the factors enumerated in *General Growth Properties*, the court considers the issue of the purpose of filing to acquire an automatic stay in lieu of a supersedeas stay without posting bond. A review of the decisional law on this fact pattern as an issue in determining subjective bad faith is amply set forth in the reported decision in *In re Paolini*, 312 B.R. 295 (Bankr. E.D. Va. 2004). Courts have held that a filing solely to acquire an automatic stay to stay a judgment pending appeal without being required to post a bond may, or may not be an indication of bad faith. As the court in *Paolini* observes, a review of the case law in this area appears closely related to decisions which have considered whether the bankruptcy case is in

-18-

essence a two-party dispute. *Id.* at 307-08. That is, in a number of reported decisions the finding that the case was filed subjectively in bad faith was based primarily upon a finding that the filing was motivated by a two-party dispute, although the losing party in state court may have filed to obtain the benefit of the automatic stay without posting a supersedeas bond. *Id.*. In deciding that using bankruptcy in this context is an indication of bad faith by the filer, "Courts have especially eschewed the use of a bankruptcy proceeding for resolution of a two-party dispute where the intent of the bankruptcy is perceived to be a relitigation of the prior action." *Id*. at 307. Another factor which appears critical in the case opinions in this regard has been consideration of whether a particular debtor was an on-going concern with the means to reorganize. *Id.* That there exists an appropriate and available state forum for resolution of the dispute between the parties, the filer has invoked the automatic stay through a bankruptcy petition solely to acquire the benefit of a stay to avoid a requirement of posting a bond for a similar stay in the state action, the debtor's financial difficulty and whether there is no on-going financial activity or prospect of financial reorganization through a plan, are all considered relevant factors be included by the court in examining the totality of circumstances on the question of filing for an improper purpose.

It is undisputed that Clarkson has failed to file necessary reports and failed to pay required fees. Each failure by itself establishes cause under the expressed provisions of Section 1112(b)(4)(H) and (K). In addition, the court finds that the bankruptcy case was filed for an improper purpose that is to frustrate the efforts of a creditor and obtain an automatic stay to prevent litigation of a two-party dispute from being resolved in an available state forum, without any prospect of an effective financial reorganization in the Chapter 11 case. Cause having been

established by any of these conclusions, the court is required to take action under Section 1112 unless unusual circumstances are demonstrated by the evidence that establish that to grant relief under Section 1112 is not in the best interest of creditors in the estate.  There is no such evidence in this case.  The only creditor which filed a response to the motion to appoint Chapter 11 Trustee or convert case to Chapter 7 was the former counsel, Brian A . Bishop, Esquire.  That two sentence response states only that it is the opinion of that unsecured creditor that the "best hope for him, and other unsecured creditors, to receive payment on their claims is through the continued involvement of Ms. Sydnor and Mr. Clarkson as debtors-in-possession."  In effect, Mr. Bishop's response evokes the familiar lyric, "Freedom is just another word for nothing left to lose."  KRIS KRISTOFFERSON, ME AND BOBBY MCGEE (Monument Records 1970).  However, it does not present any facts and certainly does not demonstrate any unusual circumstance not common to many failing Chapter 11 cases.  If the debtor is left in possession indefinitely, the naked hope of the unsecured creditor that something may arise which will allow some eventual financial recovery is not a basis to find unusual circumstances demonstrating this court should not act under Section 1112 after cause has been demonstrated.

As to the facts of Sydnor's case, the court reaches the same conclusion albeit on grounds that are not identical to that of Clarkson's case.  Unlike the Clarkson case, a few more unsecured creditors exist.  Sydnor clearly filed her case to stop an impending foreclosure by Lenders as well as to gain a federal forum for the adversary proceedings brought by Sydnor against Lenders seeking recision and damages.  In the Sydnor case the allegations for grounds for appointment for a Chapter 11 Trustee under Section 1104 or in the alternative to convert the case to a case under Chapter 7 pursuant to Section 1112 include allegations of dishonesty, gross

-20-

mismanagement and failure to pay fees due to the Office of the United States Trustee.  As to the latter grounds it is clearly established that Sydnor has not paid fees that are statutorily due to the United States Trustee and has not made a payment against that outstanding balance since September of 2009.  As stated above, failure to pay fees or charges is an enumerated cause for conversion or dismissal pursuant to Section 1112(b)(4)(K).  If the reason for that failure is the impecunious circumstance of the debtor-in-possession, that also supports a conclusion that the Sydnor is not able to successfully reorganize.  Clearly, cause has been established pursuant to Section 1112(b)(4)(K) as to the non-payment of fees and such cause requires this court to either dismiss the case or order the case converted to a case under Chapter 7, unless it is in the best interest of the creditors and the estate to instead appoint a Chapter 11 Trustee or examiner under Section 1104(a).  The court may only withhold ordering such a remedy if specific unusual circumstances are found to exist that demonstrate it is in the best interests of creditor and the estate to withhold such relief.  As an additional cause under both Sections 1104(a) and 1112(b), the court finds that dishonesty or at the very least gross mismanagement has been proven. Throughout the over two years of this case, Sydnor has testified and made statements to the court at various hearings which statements grossly distorted by omission or commission the actual underlying fact.  At some point optimism and the perhaps natural tendency of a debtor-in-possession to portray facts in the light most favorable to the debtor's opportunities becomes misrepresentation by the debtor through omission or commission, when the representations present a misleading communication of circumstance.  Perhaps the most glaring of these misrepresentations is demonstrated by the testimony of Sydnor concerning payment of taxes to Somerset County.

At the hearing held on October 8, 2009, upon Lenders disputed Notice of Default under an Adequate Protection Order as to relief from the automatic stay, and Lenders subsequent Motions for Relief from the Automatic Stay, Sydnor was asked as to outstanding taxes upon the property located in Somerset County.  The questioning and testimony was as follows:

> Q. Do you owe taxes to Somerset County for that property, that parcel?
> A. For '09 I do.
> Q. Do you owe taxes for any other years?
> A. No, I paid '06, '07, '07 and '08 at the last week of the month.
> Q. When?
> A. Last month, September.
> Q. In September?
> A. Yes, well maybe October 3rd or so.
> Q. How much money did you pay?
> A. I asked them what the balance was due for '07 and '08 or '06 and '07, whatever was due last for two years '06 and '07, '07 and '08.
> Q. How much did you pay?
> A. I have the receipt over there. It is $2,500 something.

Trial Transcript, October 8, 2009, at p.63, lines 3-18.[15]

Subsequently at that same hearing, Sydnor was asked further detailed questions as to the payment of taxes and testified:

> Q. So, you paid $2,815.73?
> A. Yes, I have made arrangements to take care of those taxes.
> Q. When you say you have made arrangements, what does that mean?
> A. I went to Somerset, I met with the tax supervisor there, Mr. Muir, I left a check for him to pay the taxes.
> Q. Was that check, when you say made arrangement, did you actually pay it or was the check post dated or something? What do you mean by arrangements?
> A. They wished to hold it and I agreed, so that is why the receipt is dated the 9th.
> Q. Why did they wish to hold it?
> A. I asked them to as I am due agricultural payments direct deposited into my account and I didn't want it to bounce, so I asked them which is why they post-dated the receipt, I guess, until I was sure that those payments were direct

---

[15] The Transcript was allowed into evidence at the hearing upon the Motion to Appoint Trustee as Movants' Exhibit 11.

-22-

deposited.
Q. Have you received those payments?
A. Not yet but they are due as the fiscal year has just started and they informed me that I would receive numerous between the 5th and the 13th.  So, they asked me to call them on the morning of the 9th and I said that I would.
Q. To either tell them you did or you did not get the money?
A. Well, I am due the money whether it has been in there for them to process it or not.
Q. Right, to tell the county whether you actually received the money or not, correct?
A. That it is waiting for them to do their side.

Trial Tr., at p 65, line 17-25, p. 66 lines 1-22.

Sydnor's chain of absolute representations and subsequent qualified representations to the point of virtual reversal of the initial representation is unfortunately not atypical of the way Sydnor has presented facts to this court during the case.  As to the tax payments for prior years for parcel 151 of the Cove Road properties, her initial testimony was that she had paid those taxes, an unqualified statement of a past event.  When asked the amount paid she testified she had a receipt.  Only when asked to produce that receipt did she start to equivocate as to the event described, *i.e*, payment.  Sydnor subsequently stated that she had made "arrangements" for payment by leaving a check with the tax supervisor.  Thereafter when directly asked whether the check was post dated she stated that "they" (which the court finds was intended to convey that the county supervisor is "they") wished to hold the check.  After further inquiry she testified that the reason for holding the check was because Sydnor did not want the check to bounce and it was to be held until she had deposited into her checking account funds to cover the check.  Thus it is clear that Sydnor was the party initiating the need to withhold negotiation of the check until a future date.

Such an "arrangement" is completely different than the unqualified initial testimony that

-23-

taxes had been paid.  Further Sydnor testified that the funds to cover the post dated check would be coming from agricultural payments directly to be deposited into her account which were due. As pointed out in closing argument, testimony at the hearing upon the Motions discloses that the USDA contract for reimbursement for installment of a micro-irrigation system is solely a reimbursement contract after the installation is completed.  The installation had not been done at the time of the hearing on October 8, 2009.  At the hearing upon the Motions, Sydnor asserted there were other contracts which could have been the source of the intended deposit.  The court finds that testimony to be not credible and an attempt to explain away the prior inconsistent testimony.

In a similar manner, funds were borrowed from a Mr. Brandt to pay the Somerset County taxes, without disclosure, notice, motion or order approving such borrowing.  That fact was alleged in the Motions.  Sydnor testified at the hearing upon the Motions that the funds were received as an "advance" and that she had some type of unwritten and inspecific arrangement with Mr. Brandt pursuant to which she was furnishing bookkeeping services.  Sydnor did not state unequivocally that those services were in exchange for release of the obligation to repay Mr. Brant.  The court found the testimony not credible and again it appeared to be an attempt to fabricate an obfuscation of events which had been uncovered.

Another basis for the allegation of dishonesty is the assertion by Lenders that certain pleadings filed in the Sydnor and Clarkson cases were "ghost written" by someone other than the Debtors who filed such documents in proper person.  When asked about these events at the hearing upon the Motions, Sydnor acknowledged that one or more documents that had been filed in proper person in her case had been drafted by an attorney.  Sydnor further testified that there

had been present in the document when prepared, a footnote that acknowledged counsel's preparation.  However, inexplicably the footnote had disappeared from the pdf verison actually filed with the court.  This explanation came only after the Motions called specific attention to the allegation of ghost writing and as to the specific document.

While the court does not specifically find that there was dishonesty in the undisclosed receiving of assistance from an attorney in preparation of documents ultimately filed by Sydnor and Clarkson in proper person, the court does find that Sydnor's testimony, in an attempt to explain, was not credible and was another attempt to escape factual allegations by fabrication of explanation.

As to statements in the Disclosure Statement filed by Sydnor in support of a Plan of Reorganization, estimates of income from the USDA contracts clearly were inflated.  The amounts provided in Exhibit G to the Disclosure Statement were at best the total receipts that could be expected under the contract in a manner that would lead the reader to conclude that all such funds would be available to the debtor-in-possession to fund the plan.  However, the contracts were only to reimburse Sydnor for the expenses of installation and the only "net profit" would be the difference, if any, between the actual costs of installation using local contractors and the allowed schedule of reimbursement under the USDA regulations.

Whether all of these overblown statements and belated explanations arise to dishonesty (which the court concludes in totality they do) there is no question that they are indicia of gross mismanagement.  In addition, it is pointed out by the movant, that Sydnor has repeatedly overdrafted her debtor in possession checking account by writing checks where funds are not available to cover the presentation of the instruments.  *See* Movant's Exhibit 7.  In addition, a

significant number of checks have been refused for insufficient funds ("NSF").  This demonstrates an attempt by Sydnor to represent to the payees of such instruments that payment is to be received through the presentation of the checks at a time when she knows that payment is not likely, or demonstrates an utter disregard by Sydnor as to the status of her account balance. The conclusion is inescapable that the fiscal affairs of the debtor-in-possession and the estate are being grossly mismanaged.

The court next must turn to the question of what is the appropriate remedy.  Section 1112 and Section 1104 read together require the court to make a finding as to what remedy is in the best interest of the creditors and the estate.  The United States Trustee argued at the hearing upon the Motions that if the Motions were to be granted, the court should choose the alternative of converting the case to a case under Chapter 7.  The United States Trustee in support of that argument offered that there was no on-going business to be reorganized through a Chapter 11 Trustee.  The United States Trustee added that the court should stay the effect of its Order converting the case to Chapter 7, for a period of 60 days to give the Debtors one last opportunity to obtain refinancing or otherwise acquire some means of financial reorganization.  No evidence was presented by the United States Trustee as to any prospect that such a 60 day say would yield any effective reorganization and the court finds that the suggestion of a stay of its Order was made purely upon sympathy for the impecunious situation of the Debtors.  Unfortunately, sympathy under the facts of these cases cannot form the basis for a decision outside the requirements of Section 1112.  Furthermore, such sympathy must be tempered by facts including the length of time that these bankruptcy cases have existed without success and the number of prior bankruptcy cases that have been filed by each of these Debtors.  The court is convinced that

-26-

the appropriate remedy is to appoint a Chapter 11 Trustee for these estates.  The distinguishing factor between converting the cases to Chapter 7 and appointing a Trustee in Chapter 11 is the expanded possibility in Chapter 11 for a trustee using independent judgment and good management to direct the affairs of the estates including on-going operations (if any) in order to optimize recovery for the creditors and the estate.  While a Chapter 7 Trustee may be granted special authority pursuant to Section 721 to operate business of a Chapter 7 debtor, the focus of a Chapter 7 is liquidation and not operation.  It may be that the Chapter 11 Trustee after examination of the affairs of the estates will conclude that liquidation is the appropriate denouement for these cases but that remains to be seen.

Further, each estate is the plaintiff in an action against the Lenders.  The Chapter 11 Trustee may evaluate and prosecute those causes of action as assets of the estate to the extent the Trustee deems them worthy.  Any recovery would benefit creditors.  It is that eventuality that militates against the court deciding that dismissal of these cases is the appropriate remedy.  For these reasons an Order will be entered directing the United States Trustee to forthwith appoint a Chapter 11 Trustee for each of these estates.


cc:     Debtors
        All Counsel
        All Parties-In-Interest

**End of Decision**